**FOR PUBLICATION**

---

DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION

---

STEVEN MALPERE,          )
                         )
     Appellant,          )
                         )
          v.             )     **D.C. Civ. App. No. 2006-231**
                         )     re: Sup. Ct. Civ. No. 2006-455
                         )
THE ANAHITA MIRAFTABI    )
REVOCABLE 2004 TRUST acting )
by and through its sole  )
Trustee, ANAHITA MIRAFTABI, )
                         )
     Appellee.           )
                         )

On Appeal from the Superior Court of the Virgin Islands,
the Honorable Brenda J. Hollar presiding.
Considered: November 4, 2011
Filed: December 5, 2019

BEFORE: **CURTIS V. GÓMEZ**, Judge of the District Court of the Virgin
Islands; **WILMA A. LEWIS**, Chief Judge of the District Court of the
Virgin Islands.[1]

APPEARANCES:

**Judith L. Bourne, Esq.**
St. Thomas, U.S.V.I.
     *For the Appellant,*

**Mark D. Hodge, Esq.**
St. Croix, U.S.V.I.

---

[1] While Judge Julio A. Brady of the Superior Court of the Virgin
Islands, Division of St. Croix, sat on the panel that considered this matter,
he retired and passed away before the decision was issued.

*For the Appellee.*

## MEMORANDUM OPINION

**PER CURIAM,**

This is an appeal of the Superior Court's judgment of eviction in a forcible entry and detainer action and of the Superior Court's order denying a motion to reconsider its judgment of eviction. In this appeal, we are asked to determine whether the trial court appropriately exercised jurisdiction under the Virgin Islands Forcible Entry and Detainer Statute. Because we conclude that the Superior Court lacked subject matter jurisdiction over this action under the Virgin Islands Forcible Entry and Detainer Statute, we reverse and remand this matter to the Superior Court for further proceedings.

### I. FACTS

The relevant factual background of this matter began in 2005. At that time, Steven Malpere ("Malpere"), Appellant, owned property on Water Island, described as "Lot 51," "Lot 52," and "Lot 53" (collectively, the "Water Island Properties"). Malpere lived in a home located on Lot 52.

During that time, Malpere was involved in a debt action, *Sprat Bay Homeowners Association, Inc. v. Steven Malpere, et al.*, Superior Court Division of St. Thomas/St. John Civil No. 430-2004 (hereinafter "*Sprat Bay*"). In the *Sprat Bay* action, various lien-

holders were suing Malpere for outstanding debts. At that time,
Malpere had liens against the Water Island Properties totaling
approximately $570,000.

During the pendency of the Sprat Bay action, Malpere met
Anahita Miraftabi ("Miraftabi").[2] After meeting, Malpere and
Miraftabi began a romantic relationship.

Subsequently, Malpere conveyed the Water Island Properties
to the Anahita Miraftabi Revocable Trust (the "Trust") by
warranty deed. Miraftabi paid $570,000 to Malpere in exchange for
the warranty deed. The warranty deed was recorded on September
29, 2005.

Malpere and Miraftabi resided together on Lot 52 of the
Water Island Properties until March of 2006. At that time Malpere
and Miraftabi traveled to California. The following month,
Malpere returned to the Water Island Properties. Miraftabi
remained in California. In May of 2006, Miraftabi requested that
Malpere move out of the home located on Lot 52. She explained
that she wished to rent the home to pay the mortgage on the
properties. Malpere refused to move out.

Subsequently, Miraftabi, on behalf of the Trust, hired

---

[2]Miraftabi, sole trustee of the Anahita Miraftabi Revocable
2004 Trust, Appellee, lived in California, where she owned and
lived in a condo. Miraftabi was a C.P.A. by trade. Miraftabi also
had a life and disability insurance license, a stock broker
license, and a California real estate license.

counsel to serve Malpere with a Notice of Termination pursuant to V.I. CODE ANN. TIT. 28, § 752. The Notice gave Malpere ninety days to vacate the premises. Malpere failed to vacate the premises within ninety days. Miraftabi then served Malpere with a Notice to Quit pursuant to V.I. CODE ANN. TIT. 28, § 789, instructing Malpere to vacate the premises. Malpere failed to vacate the premises at that time.

Miraftabi then filed a Forcible Entry and Detainer ("FED") action against Malpere in the Superior Court of the Virgin Islands. Miraftabi attached the Warranty Deed, Notice of Termination, Notice to Quit, and Affidavits of Service, to the complaint.

Thereafter, Miraftabi filed a claim against Malpere in the *Sprat Bay* action. Malpere then filed a cross-claim against Miraftabi in the *Sprat Bay* action alleging fraud with respect to the conveyance of the Water Island Properties (the "Cross-Claim"). Malpere claimed that Miraftabi, on behalf of the Trust, held the Water Island Properties in a constructive trust in favor of Malpere.

Subsequently, Malpere filed a motion to dismiss Miraftabi's FED action. Malpere asserted that the Superior Court lacked subject matter jurisdiction over the FED action due to the pending cross-claim in the *Sprat Bay* action.

On October 19, 2006, the Superior Court heard oral argument in the FED action on Malpere's motion to dismiss. The Superior Court also heard testimony regarding whether Miraftabi had established a prima facie FED case, and whether Malpere had presented a "colorable" claim of title to the Water Island Properties based on Malpere's equitable claim to title asserted in the *Sprat Bay* action. At the conclusion of argument, the Superior Court found in favor of Miraftabi on Malpere's motion to dismiss. The Superior Court also ruled from the bench in favor of Miraftabi on her FED claim.

On October 23, 2006, Malpere filed a motion to reconsider the Superior Court's October 19, 2006, rulings in the FED action.

On October 24, 2006, the Superior Court formally entered judgement in favor of Miraftabi on her FED claim.

Subsequently, on November 16, 2006, the Superior Court entered an order denying Malpere's motion for reconsideration as to its rulings on Malpere's motion to dismiss and Miraftabi's FED claim.

On December 6, 2006, Malpere filed notices of appeal, to this Court, of the Superior Court's October 24, 2006, judgment and its November 16, 2006, order denying Malpere's motion for reconsideration.

Miraftabi has moved to dismiss this appeal. She asserts that

this Court lacks subject matter jurisdiction.

## II.   JURISDICTION & STANDARD OF REVIEW

### A.   Jurisdiction

This Court has jurisdiction over appeals of final judgments and orders of the Superior Court filed before January 29, 2007, the date on which the Supreme Court of the Virgin Islands was certified as ready to assume such jurisdiction. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; V.I. CODE ANN. TIT. 4, § 33.[3]

### B.   Standard of Review

The Court's review of the Superior Court's application of legal precepts is plenary, and findings of fact are reviewed under a clearly erroneous standard. *Prosser v. Prosser*, 921 F. Supp. 1428, 1432 (D.V.I. App. Div. 1996).

The Court's review of the Superior Court's denial of a motion for reconsideration is for an abuse of discretion. *In re Hartlage*, 54 V.I. 446, at *7 (V.I. September 30, 2010).

---

[3]  The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

### III. <u>ANALYSIS</u>

### A. Whether This Court has Subject Matter Jurisdiction Over This Appeal

"Rule 4(a) of the Virgin Islands Rules of Appellate Procedure provides that '[a]n appeal ... permitted from the Superior Court to the Appellate Division shall be taken by filing a notice of appeal with the Clerk of the Superior Court within the time allowed by Rule 5.'" *Brown v. Oliver*, 52 V.I. 639, 643 (D.V.I. 2009) (quoting V.I. R. App. P. 4(a)).

"Rule 5(a) requires that the notice of appeal be filed with the Clerk of the Superior Court 'within thirty days after the date of entry of the judgment or order appealed from . . . .'" *Brown*, 52 V.I. at 643 (quoting V.I. R. App. P. 5(a)). "'A judgment or order is entered...when it is entered in compliance with Superior Court Rule 49....The time for appeal begins upon the entry of the final order into the docket.'" *Brown*, 52 V.I. at 643 (quoting V.I. R. App. P. 5(a)(9)). "Superior Court Rule 49 provides that '[u]pon determination of an action by a judge, the judge shall sign the judgment which shall take effect, for purposes of appeal, upon entry by the clerk, unless otherwise ordered by the court.'" *Brown*, 52 V.I. at 643 (quoting Super. Ct. R. 49).

However, Rule 5(a) also states that "[i]f any party makes a

timely motion of a type specified immediately below within ten days after entry of judgment in the Superior Court ... the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding." V.I. R. APP. P. 5(a)(4).

This provision applies to a motion

. . .

(iii) to alter or amend the judgment under Super. Ct. R. 50; ...

*Id.* "Pursuant to Rule 50 of the Rules of the Superior Court [a motion for reconsideration], [filed] within ten days of the underlying order, is considered as a motion to alter or amend under Rule 59(e) of the Federal Rules of Civil Procedure." *In re Hartlage*, 54 V.I. 446, at *10 (V.I. September 30, 2010) (citing *Ruiz v. Jung*, 2009 V.I. Supreme LEXIS 43, *9 (V.I. Oct. 19, 2009)). A motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) tolls the thirty-day time limit for taking an appeal. *Sonnenblick-Goldman Corp. v. Nowalk*, 420 F.2d 858, 859 (3d Cir. 1970) (citing Fed. R. Civ. P. 4(a)).

Here, the Superior Court announced its judgment of restitution in favor of Miraftabi on October 19, 2006. Although the Superior Court did not formally enter judgment until October 24, 2006, Malpere filed a motion to reconsider the judgment of

restitution on October 23, 2006. Therefore, Malpere's motion to reconsider the judgment will be treated as filed on October 24, 2006, after entry of the judgment of restitution. V.I. R. App. P. 5(a)(1) ("A notice of appeal filed after the announcement of a judgment or order - but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment.").

In the memorandum and proposed order attached to his motion to reconsider, Malpere asked that the Superior Court vacate its judgment of restitution and dismiss the FED matter. Under Rule 50[4] of the Rules of the Superior Court, Malpere's motion for reconsideration, which was filed within ten days[5] of the underlying order, is considered a motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *In re Hartlage*, 54 V.I. 446, at *10 (V.I. September 30, 2010) (citing *Ruiz v. Jung*, 2009 V.I. Supreme LEXIS 43, *9 (V.I. Oct. 19, 2009); *see also Rankin v. Heckler*, 761 F.2d 936,

---

[4]"For good cause shown, the court, upon application and notice to the adverse party, may set aside an entry of default, judgment by default or judgment after trial or hearing. Rules 59 to 61, inclusive, of the Federal Rules of Civil Procedure shall govern such applications." Sup. Ct. R. 50.

[5]At the time Malpere filed his motion, Rule 59(e) required a motion to alter or amend a judgment to be filed within ten days of the entry of judgment. The Rule was amended effective December 1, 2009 to change the time for filing a timely motion to alter or amend judgment from 10 days to 28 days.

942 (3d Cir. 1985) ("Regardless how it is styled, a motion filed within ten days of entry of judgment questioning the correctness of a judgment may be treated as a motion to alter or amend the judgment under 59(e).").

Because Malpere filed his Rule 59(e) motion to reconsider the Superior Court's final judgment within ten days of entry of the judgment, the thirty day clock for filing a notice of appeal was tolled. FED. R. CIV. P. 4(a). The Superior Court's denial of Malpere's motion to reconsider on November 16, 2006, triggered the thirty day clock for filing a notice of appeal for both the judgment of restitution and the order denying Malpere's motion for reconsideration. Thus, Malpere had thirty days from November 16, 2006, in which to file his notice of appeal. Malpere timely filed his notice of appeal on December 6, 2006.

## B. Whether the Superior Court Appropriately Exercised Subject Matter Jurisdiction Under the Virgin Islands Forcible Entry and Detainer Statute

Malpere asserts that the Superior Court lacked subject matter jurisdiction over the FED action.

"FED actions are 'summary actions to determine rights of peaceable possession of real property.'" *Four Winds*, 50 V.I. at 525 (quoting *Estate of Thomas Mall, Inc. v. Territorial Court of Virgin Islands*, 923 F.2d 258, 264 (3d Cir. 1991) (citation omitted), cert. denied, 502 U.S. 808, 112 S. Ct. 50, 116 L. Ed.

2d (1991)). FED actions are codified at Title 28, Sections 781-95 of the Virgin Islands Code (the "FED Statute"). The FED Statute provides that,

> (a) when a forcible entry is made upon any premises, or when an entry is made in a peaceable manner and the possession is held by force, the person entitled to the premises may maintain an action to recover the possession thereof.

V.I. CODE ANN. TIT. 28, §782(a).

The jurisdiction of a trial court hearing an FED action is limited to

> determining the issue of peaceable possession and does not extend to (a) **an adjudication of title or** (b) the right to possession; nor can the justice adjudicate a right of possession that depends on an **equitable interest** in the premises[] or inquire into the equitable rights and give relief to which the party might be entitled in **equity**.

*Four Winds Plaza Corp. v. White*, 50 V.I. 520, at 525 (D.V.I. 2008) (quoting *Inter Car. Corp. v. Discount Car Rental*, 21 V.I. 157, 158 (V.I. Terr. Ct. 1984))(emphasis added).

"'Where a tenant is retaining possession by force, relief is available in a summary FED proceeding only if there 'is an *undisputed* oral or written lease agreement, and rent is due and owning thereon; or there is an *undisputed* oral or written lease which has expired.'" *Four* Winds, 50 V.I. at 525 (quoting *C.M.L., Inc. v. Dunagan*, 904 F.2d 189, 191 (3d Cir. 1990) (emphasis added).

An "'FED cause of action will not lie where title to the
premises is in question; *or* where there is proved to the Court to
exist a bona fide question of the existence of a lease at law or
in equity, which has not yet expired.'" *Four Winds*, 50 V.I. at
525 (stating that "the jurisdiction of the Superior Court was
limited to the adjudication of issues that 'did not raise a
colorable claim of right under a lease agreement,...' and thus
any issue outside the scope of Four Winds' right of possession
was not properly before the trial judge") (quoting *Dunagan*, 904
F.2d at 191)(emphasis added); *Inter Car Corp.*, 21 V.I. at 159-160
(citing *Estate of Thomas Mall, Inc.*, 923 F.2d at 264 ("As soon as
a defendant in possession in an FED action raises a colorable
defense requiring construction of an agreement between a property
owner and the party in possession, an FED action will not lie")
(citation omitted)).

However, as further explained:

> Jurisdiction of [an FED] proceeding is not, apart from
> statute, ousted by a mere averment in a defendant's
> pleading, statement or argument, of ownership of the
> land, or that a question of title, legal or equitable
> is involved. The Court may proceed until it appears
> that the question involved is in fact one of title or a
> complicated case of the right to possession. To
> amplify, the Court is duty-bound to proceed with the
> evidence until it appears that either or both of these
> issues does or do in fact exist.

*Dunagan*, 904 F.2d at 191 (quoting *Inter Car*, 21 V.I. at 158-59).

"The trial court should hear evidence until it is able to
determine, *based on the evidence*, whether [the defendant] has
raised a *facially bona fide and good faith defense* to [the
plaintiff's] claim for possession." *Virgin Islands Port Authority
v. Joseph*, 49 V.I. 424, 431 (V.I. 2008) (emphasis added)
(reversing and remanding to the trial court with instructions to
hear evidence in order to determine whether the tenant had raised
a facially bona fide and good faith defense to the landlord's
claim for possession).

Courts hearing FED actions have not explicitly defined the
term "colorable claim." However, courts have addressed the
definition of "colorable claim" in other contexts. *See, e.g.*,
*Gorini v. AMP, Inc.*, 94 Fed. Appx. 913, 917 (3d Cir. 2004)
(stating in an ERISA matter "that 'the concept of a colorable
claim necessarily encompasses situations in which the requester
has a reasonable basis for believing that he or she has a
meritorious claim but is in fact mistaken.'") (citing *Daniels v.
Thomas & Betts Corp.*, 263 F.3d 66, 79 (3d Cir. 2001)); *Neuma,
Inc. v. AMP, Inc.*, 259 F.3d 864 (7th Cir. 2001) (stating in an
ERISA matter that a "colorable claim" is one with "at least
arguable chance of success and could not be characterized as
frivolous"); *Sedlack v. Braswell Group, Inc.*, 134 F.3d 219 (4th
Cir. 1998) (explaining in a matter involving employee

compensation plans that a "colorable claim" is one that lies

between meritorious and frivolous); *Panaras v. Liquid Carbonic*

*Industries Corp.*, 74 F.3d 786, 790 (7th Cir. 1996) ("The

requirement of a colorable claim is not a stringent one.");

*Boettcher v. Secretary of Health & Human Services*, 759 F.2d 719

(9th Cir. 1985) (explaining that a determination that a

constitutional claim lacks merit does not necessarily mean that

it is so insubstantial and immaterial that it does not pass the

"colorable" test); *Keniston v. Roberts*, 717 F.2d 1295, 1298 (9th

Cir. 1983) (explaining in a matter arising under 42 U.S.C. § 1983

that "a colorable claim for relief" is one "that is not wholly

insubstantial or frivolous.") (internal citation omitted); *Rohn &*

*Carpenter, LLC v. Cameron*, 2011 WL 3687626 (D.V.I. Aug. 22, 2011)

(stating in a matter concerning fraudulent joinder that "a claim

is considered 'colorable' as long as it is not 'wholly

insubstantial and frivolous.'") (citing *Batoff v. State Farm Ins.*

*Co.*, 977 F.2d 848, 851 (3d Cir. 1992)); *Volitis v. Independence*

*Blue Cross*, 2007 WL 3071623 (E.D. Pa. Oct. 19, 2007) (clarifying

in a matter concerning employee benefits that "[a] colorable

claim means a non-frivolous claim.").

This Court's Appellate Division addressed the "colorable

claim" issue in *H&H Avionics v. St. Croix Airpark*, 50 V.I. 829

(D.V.I. 2008). In that case, St. Croix Airpark ("Airpark"), a

Virgin Islands corporation with six shareholders, leased property from the Virgin Islands Port Authority. Each of Airpark's shareholders contributed, financially and/or in labor, to constructing a facility on the leased property. After the facility was completed, the shareholders shared space in the facility. The facility served as a base for operating their respective businesses.

Subsequently, Airpark decided to make outstanding rents due by a particular date. Airpark then requested that shareholders Hughes and Dilotis pay their overdue rents. Hughes and Dilotis did not comply. Airpark then served them with a notice to quit. The notice directed Hughes and Dilotis to vacate the premises within thirty days. They did not comply.

Thereafter, Airpark commenced an FED action against the two shareholders. Hughes and Dilotis filed a motion to dismiss. They argued that the Superior Court of the Virgin Islands lacked subject matter jurisdiction over the FED action because "they raised a colorable claim of title to the premises they occupied." *H&H Avionics*, 50 V.I. at 830 n.3.

At trial, the Superior Court found that, although no written leases were executed, Hughes and Dilotis had made some monthly rental payments to Airpark. The court ruled in favor of Airpark. It held that Hughes and Dilotis "were tenants of [Airpark] and

that in the absence of a written lease, a month-to-month tenancy

existed." *Id.* at 832. The court also found that Hughes and

Dilotis had "failed to pay the agreed upon rent and that Airpark

was entitled to restitution of the premises." *Id.* Hughes and

Dilotis appealed to this Court's Appellate Division.

On appeal, the Court found that

[Hughes and Dilotis] are shareholders, co-founders and purported tenants of [Airpark]. [Airpark] is a small, closely-held corporation whose undisputed primary purpose was to construct and maintain a building for the shareholders to occupy. [Hughes and Dilotis] provided labor, materials and maintenance contributions. In addition, there is no written lease between the parties and the parties contest whether an oral lease for rental payments existed. Nonetheless the trial court addressed this matter in a summary FED proceeding.

*H&H Avionics*, 50 V.I. at 834 (quoting *Thomas Mall Inc.*, 923 F.2d

at 264). Under these facts, this Court held that Hughes and

Dilotis had "raised a colorable claim of right to occupy the

premises" because their "claim of right unquestionably required

the trial court's construction of an oral lease." *Id.*

Other courts have similarly considered whether a "colorable"

claim existed based on whether, in deciding the FED action, the

court would have to construe the terms of a disputed oral or

written agreement. For instance, in *Virgin Islands Community

Housing Ltd Partnership v. Rivera*, 50 V.I. 179, 182 (V.I. Super.

Ct. 2008), a landlord brought an FED action against a tenant. The

tenant filed a motion to dismiss for lack of subject matter
jurisdiction. The Superior Court conducted a hearing on the
matter. It found that there was no dispute that the tenant had a
lease with the landlord's complex. The court also found that
there was no dispute that the tenant was approved as a
participant under the Section 8 Project-Based Assistance Housing
Choice Voucher Program ("Section 8") run by the U.S. Department
of Housing and Urban Development ("HUD").[6]

After hearing testimony and reviewing federal regulations
promulgated by HUD, the court determined that resolving the
issues in the case "would require the Court to construe the
meaning of the agreement between the parties." *Rivera*, 50 V.I. at
183. The court found that it did not have subject matter
jurisdiction over the FED action.

The Third Circuit has also addressed how a court should
determine whether a colorable claim exists. For instance, in
*C.M.L., Inc. v. Dunagan*, 904 F.2d 189, 190 (3d Cir. 1990), Don
Dunagan ("Dunagan") leased a sports bar from C.M.L. Subsequently,
Dunagan defaulted under the terms of his lease. Thereafter,
Dunagan began speaking with a prospective tenant, Aft Cabin,

---

[6]The tenant argued that the terms of the lease contradicted
and were superseded by a Section 8 tax regulation. She stated
that the regulation entitled her to protection from being evicted
at the expiration of the lease, absent good cause.

regarding his default. Aft Cabin arranged to purchase Dunagan's business in exchange for paying Dunagan's past-due rent. Aft Cabin then negotiated with C.M.L. to release Dunagan from his lease in exchange for a ten-year lease agreement between C.M.L. and Aft Cabin. C.M.L. and Aft Cabin never came to a mutually beneficial agreement and thus never signed a lease. Nonetheless, Aft Cabin took possession of the sports bar. Subsequently, Aft Cabin fell behind in rent payments. C.M.L instituted an FED action against Aft Cabin.

Aft Cabin moved to dismiss the FED action for lack of jurisdiction. Aft Cabin argued that, "in light of the alleged contractual obligation, there was a 'bona fide question of the existence of a lease at law or in equity, which has not expired.'" *Id.* at 191 (quoting *Inter Car*, 21 V.I. at 159).

The trial judge held a hearing on the motion to dismiss. At the close of argument, the trial judge concluded that the court had jurisdiction over the FED action. As such, the court denied the motion to dismiss. Aft Cabin appealed to the Third Circuit.

On appeal, the Third Circuit determined that, "at no time in the hearing did [Aft Cabin] advance sufficient evidence to create a bona fide question as to the existence of a new lease." *Id.* The appellate court affirmed the trial court's ruling on the motion to dismiss.

Here, as in *H&H Avionics*, there is no "*undisputed* oral or written [] agreement." Miraftabi asserts that the Trust is the sole owner of the Water Island Properties (the "Property"), as evidenced by the warranty deed. She also asserts that, although there was no explicit written or oral lease, there was an implied tenancy at sufferance, under which Malpere was residing on the Property rent-free. (Appellee's Brief at 6). However, Malpere asserts that he was entitled to reside on the property, not as a tenant, but as a constructive trust beneficiary.

In determining whether the Superior Court properly exercised jurisdiction over Miraftabi's FED action, this Court will review the record to determine whether the trial judge complied with *Inter Car* by "proceed[ing] with the evidence until" it was clear whether Malpere raised a colorable claim to title. *Inter Car*, 21 V.I. at 159.

During the October 19, 2006, hearing, Malpere testified that at the time he met Miraftabi, he had a contract with his son and daughter-in-law which would allow him to raise money to pay off his debts. Under the contract, Malpere was to transfer title of Lot 52 to his son and daughter-in-law for $700,000. The son and daughter-in-law were to get financing for four hundred thousand dollars. They were then to pay the remaining three hundred thousand dollars to Malpere over a period of five years. During

those five years, Malpere would continue to reside on the Lot 52 property and would retain ownership of Lot 51 and Lot 53.

Malpere asserts that, after falling in love with Miraftabi, and pursuant to Miraftabi's advice, he terminated the agreement with his son and daughter-in-law. (FED Hr'g Tr.111, October 19, 2006). Miraftabi purportedly told Malpere that, to protect Malpere's property interest, he should sign all three lots over to her for the amount of his debt, putting everything in her trust's name. Miraftabi also purportedly told Malpere that the two of them would be partners, "but not in writing." (FED Hr'g Tr.117). Under the alleged partnership, Miraftabi and Malpere would either eventually sell the property for a shared profit or they would sell the property, place the proceeds in Miraftabi's trust, and then Miraftabi would make Malpere a beneficiary under the Trust. (FED Hr'g Tr.121).

Malpere asserts that, because of Miraftabi's credentials and his strong feelings for Miraftabi, he trusted her to handle the transaction in his best interest. However, after title to the property was transferred to the Trust, Miraftabi decided not to sell the property.

Malpere testified that he would not have sold the property to Miraftabi for such a low price if it were not for her promise that his debts would be paid off. He also testified that he would

not have sold the property to Miraftabi if it were not for her
promise that the two of them would be partners in the property.
Malpere explained that, under the partnership, Malpere and
Miraftabi were to have joint ownership of any proceeds from the
property, minus the amount that Miraftabi had invested in the
property.[7]

Miraftabi testified that when she called Malpere, asking him
to move out of the home on Lot 52 so that she could rent it,
Malpere refused. She testified that Malpere stated that "this is
his property" and how could Miraftabi "evict him, being the
owner." (FED Hr'g Tr.23).[8]

In its findings of fact, the Superior Court found that the
benefit of putting the property into the Trust's name was to try
to protect Malpere from creditors. The court found that, if there
was a partnership as Malpere indicated, the only benefit it would
have given would be to protect Malpere from any of his possible
creditors attaching his property. (FED Hr'g Tr.244-45). The court
also found that Malpere was asking the court to acknowledge some

---

[7]The Court notes that Malpere's testimony regarding his
previous contract with his son and daughter-in-law lends support
for Malpere's contention that his purpose in transacting with
Miraftabi to transfer title of the Properties to the Trust was
for Malpere to retain (joint) ownership and/or possession of the
Property, while finding a way to pay off his debts.

[8]The Court notes that this testimony is consistent with
Malpere's claim to title of the Water Island Properties.

kind of equitable interest. It found, however, that Malpere, in attempting to transfer title of the property for the purpose of depriving his creditors of the benefit of attaching the property, did not do equity. (FED Hr'g Tr.245). The court also determined that there was no issue concerning clear legal title or equitable title because Malpere was estopped based, apparently, on the doctrine of unclean hands. *Id*. Thus, the Superior Court concluded that Malpere had not raised a colorable claim concerning title of the Water Island Properties. The court granted judgment in favor of Miraftabi.

Although the Superior Court properly examined the evidence to determine whether Malpere raised a colorable claim to title of the Water Island Properties, it erred in actually making a determination regarding the merits of whether Malpere was entitled to his asserted equitable interest. *See H&H Avionics*, 50 V.I. at 834 ("While we may not appropriately express an opinion as to the merits, determination of the Appellants' claim of right unquestionably required the trial court's construction of an oral lease"); *see also Inter Car*, 21 V.I. at 158 (stating that the trial court cannot "adjudicate a right of possession that depends on an equitable interest in the premises [] or inquire into the equitable rights and give relief to which the party might be entitled in equity"). In finding that Malpere was estopped from

asserting an equitable interest in the property, the Superior

Court went beyond the bounds of its FED jurisdiction. *See Estate*

*of Thomas Mall Inc.*, 923 F.2d at 264 ("As soon as a defendant in

possession in an FED action raises a colorable defense requiring

construction of an agreement between the property owner and the

party in possession, an FED action will not lie").

Here, the Superior Court necessarily had to construe the

contested oral partnership agreement, as well as the alleged

tenancy by sufferance and equitable interest in the Properties,

before it could grant judgment of restitution to Miraftabi.

Therefore, under these facts, Malpere made more than "a mere

averment in [his] pleading statement or argument, of ownership of

the land" and he raised a colorable claim of the right to occupy

the premises. *See Inter Car*, 21 V.I. at 158-59; *see also* H&H

*Avionics*, 50 V.I. at 834 (appellants raised a colorable claim

where determination of appellant's claim of right required the

court's construction of a contested oral agreement); *see also*

*Rivera*, 50 V.I. at 183 ("we are led to the conclusion that this

Court does not have jurisdiction of this action as an FED case,

since to resolve the issues in the case, the Court would have to

construe the lease between [t]he parties"). While we may not

appropriately express an opinion as to the merits, a

determination of Malpere's claim of right unquestionably required

the Superior Court's construction of an oral agreement. *See H&H Avionics*, 50 V.I. at 834.

The Court finds this case factually similar to *H&H Avionics*. Here, as in *H&H Avionics*, there is a dispute concerning title of the property. In *H&H Avionics*, the appellants asserted a claim to title as shareholders. Here, Malpere asserts a claim to title as a silent partner in the ownership interest of the Property and an equitable claim to title as a constructive trust beneficiary.

In *H&H Avionics*, the parties disagreed about whether an oral lease existed. Here, Malpere and Miraftabi disagree about whether a partnership agreement existed. Just as in *H&H Avionics*, there is no undisputed written lease or oral lease and the parties contest whether an oral partnership agreement or a tenancy by sufferance existed. Such claims may be enough to reach the threshold of "colorable." *E.g., H&H Avionics*, 50 V.I. at 833 (finding that a "colorable" claim existed where the parties contested: (1) whether a lease existed, oral or otherwise; (2) whether a tenancy was created by law or agreement; and (3) whether as shareholders/partial owners of Airpark, the shareholders occupied the premises under a claim of right).

Although we do not reach the merits in such an action, we will look to the law of the Virgin Islands on constructive trusts to aid in our determination of whether Malpere raised a colorable

constructive trust claim.

> A constructive trust is an equitable remedy utilized by
> courts to prevent unjust enrichment. It is an established
> principle of equity that "where the owner of property
> transfers it, being induced by fraud, duress or undue
> influence of the transferee, the transferee holds the
> property upon a constructive trust for the transferor."

*Francois v. Francois*, 599 F.2d 1286, 1291 (3d Cir. 1979).

(alterations omitted) (quoting Restatement (First) of Restitution

§ 166 (1937)).

The Virgin Islands Supreme Court has held that a

constructive trust may arise as the result of a lopsided

transaction between two persons sharing a "confidential

relationship." *Ross v. Hodge*, 58 V.I. 292, 302-06 (2013). "A

confidential relation exists between two persons when one has

gained the confidence of the other and purports to act or advise

with the other's interest in mind." *Id.* at 303 (internal

quotation marks omitted) (quoting *Francois*, 599 F.2d at 1291).

When determining whether two parties shared a confidential

relationship, courts "consider a variety of factors, including

the reliance of one party upon the other, the relationship of the

parties prior to the challenged transaction, the relative

business capacities or lack thereof between the parties, and the

readiness of one party to follow the other's guidance in

complicated transactions." *Id.* at 303 n.15 (internal quotation

marks omitted) (quoting *Constructive Trust Formed Because of Abuse of Confidential Relationship Between Tranferee and Transferor of Property,* 79 Am. Jur. Proof of Facts 3d 269 § 13 (West 2011)).

Once the existence of a confidential relationship is established, a burden is imposed "upon the party benefiting from the transaction of proving that he took no unfair advantage of his relationship with the other." *Id.* at 304 (quoting *Francois,* 599 F.2d at 1292). "In determining whether a transaction is free from undue influence[,] the Restatement (Second) of Contracts instructs courts to analyze multiple factors, including 'the unfairness of the resulting bargain, the unavailability of independent advice, and the susceptibility of the person persuaded.'" *Id.* (original alterations omitted) (quoting Restatement (Second) of Contracts § 177 cmt. b (1981)).

Malpere asserts that there was an oral partnership agreement between the parties under which Malpere would transfer the Water Island Properties to Miraftabi's trust in favor of both Malpere and Miraftabi. Although the alleged oral agreement may be found (by a court with jurisdiction) unenforceable because of the Statute of Frauds, after a review of the October 19, 2006, transcript, the Court finds that Malpere advanced sufficient

evidence to create a bona fide question as to the existence of a constructive trust. Specifically, Malpere raised a non-frivolous constructive trust claim through his testimony concerning Miraftabi's representations regarding the transfer of title transaction, the close and trusting relationship between Malpere and Miraftabi, Malpere's indebtedness, and Miraftabi's failure to follow through on her pre-transfer representations. *Cf. C.M.L., Inc.*, 904 F.2d at 191 (holding that "at no time in the hearing did [Aft Cabin] advance sufficient evidence to create a bona fide question as to the existence of a new lease").

### C. Whether the Superior Court Abused its Discretion in Denying the Motion for Reconsideration

Malpere is appealing from the Superior Court's denial of his motion for reconsideration. Because we find that the Superior Court lacked subject matter jurisdiction over the FED action, we need not reach this issue.

## IV. <u>CONCLUSION</u>

For the reasons discussed above, we conclude that the Superior Court lacked subject matter jurisdiction over this action under the Virgin Islands Forcible Entry and Detainer statute. We therefore reverse the Superior Court's judgment of restitution and remand this matter with the instruction that the presiding judge of the Superior Court assign this matter to the

Superior Court's regular civil docket. An appropriate Order

follows.


ATTEST:
Glenda Lake
Clerk of Court

by: *(signature)*
Deputy Clerk